UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BOBBIE L. MEAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:07CV452 TIA |
| | ) |
| SALEM MEMORIAL DISTRICT HOSPITAL | ) |
| and | ) |
| CHUKWUEMEKA M. EKEKE, M.D., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion to Dismiss filed by Defendants Chukwuemeka M. Ekeke, M.D., and Salem Memorial District Hospital. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**Facts**

The facts in the light most favorable to the Plaintiff, as the non-moving party, are as follows:

On or about April 14, 2005, Plaintiff, Bobbie Mead, presented to the Emergency Department at Salem Memorial District Hospital "with neurological signs and symptoms, including but not limited to left sided weakness and came under the care and treatment of defendant Ekeke[.]" (Complaint, p. 3, ¶ 9) After examining Plaintiff, Defendant Ekeke discharged Plaintiff with a diagnosis of "mild TIA, left calf strain." (Complaint, p. 3, ¶ 10) Plaintiff was later "transported to St. John's Hospital via air ambulance with a diagnosis of acute stroke." (Complaint, p. 3, ¶ 11) According to the Plaintiff, he suffered permanent and progressive neurological injury and damage, including but not limited to paralysis, as a result of the stroke. (Complaint, p. 3, ¶ 11)

On March 22, 2008, Plaintiff filed a two-count Complaint against Defendants seeking

damages for alleged negligent medical treatment. Count I alleges medical negligence under Missouri law. Count II alleges a violation of the Emergency Medical Treatment and Labor Act ("EMTALA"). With regard to the EMTALA claim, Plaintiff asserts that Defendants (1) failed to provide an appropriate medical screening examination within the capability of the emergency department of Defendant SMDH; (2) failed to appropriately diagnose Plaintiff's emergency medical condition, thus placing Plaintiff's health in serious jeopardy which resulted in serious bodily function and/or organ impairment and dysfunction; and (3) failed to stabilize or to provide stabilizing treatment of Plaintiff by failing to provide such medical treatment of the condition as was necessary to assure, within reasonable medical probability, that no material deterioration of Plaintiff's condition was likely to result. (Complaint, pp. 9-10). On April 25, 2007, Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, arguing that the allegations contained in Count II of Plaintiff's Complaint are insufficient to invoke federal jurisdiction under the EMTALA.

## **Standards for Ruling on a Motion to Dismiss**

When ruling on a motion to dismiss under Rule 12(b)(6), the allegations in the complaint must be construed in plaintiff's favor.[1] Duffy v. Landberg, 133 F.3d 1120, 1122 (8th Cir. 1998) (citations omitted). Further, "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief." Werner Enterprises, Inc. v. MNX Carriers, Inc., 163 F.3d 490, 491 (8th Cir. 1998) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). A court may properly dismiss a complaint only

---

[1] Although Defendants maintain that their Motion to Dismiss is based upon lack of subject matter jurisdiction under Rule 12(b)(1), the majority of their Brief and Reply Brief argue that Plaintiff's Complaint fails to state a claim under the EMTALA. Therefore, the undersigned will review the Motion under Rule 12(b)(6).

where the allegations on the face of the complaint reveal "'some insuperable bar to relief.'" Duffy, 133 F.3d at 1122 (quoting Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995)).

**Discussion**

In their Motion to Dismiss, Defendants maintain that Plaintiff Complaint fails to state a claim for a violation of the EMTALA; therefore, this Court is without jurisdiction to entertain Plaintiff's Complaint. In response, Plaintiff asserts that, under federal pleading standards, he has alleged a failure to provide an appropriate medical screening examination such that he may be allowed to establish evidence from which a jury could conclude that Plaintiff was treated differently than other patients. (Memo. in Opposition, Doc. # , pp. 2-3)

After considering the Complaint, the Motion to Dismiss, and the responses thereto, the undersigned finds that dismissal is appropriate. Congress enacted the Emergency Medical Treatment and Active Labor Act ("EMTALA") in 1986 to "address a distinct and rather narrow problem - the 'dumping' of uninsured, underinsured, or indigent patients by hospitals who did not want to treat them." Summers v. Baptist Med. Ctr. Arkadelphia, 91 F.3d 1132, 1136 (8th Cir. 1996); 42 U.S.C. § 1395dd. The Eighth Circuit Court of Appeals has clearly stated that EMTALA does not create "a general federal cause of action for medical malpractice in emergency rooms." Id. at 1137. Indeed, the court in Summers affirmed the rule that "EMTALA is not a federal malpractice statute and it does not set a national emergency health care standard; claims of misdiagnosis or inadequate treatment are left to the state malpractice arena." Id.

Instead, EMTALA provides a medical screening requirement, which states that "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . ." 42 U.S.C. § 1395dd(a). In addition, the statute requires that when the

3

hospital determines that a person has an emergency medical condition, "the hospital must provide either such treatment as may be required to stabilize the medical condition, or for transfer of the individual to another medical facility . . ." 42 U.S.C. § 1395dd(b)(1)(A) and (B). With regard to proper screening procedure, the Summers court held, "[a]n inappropriate screening examination is one that has a disparate impact on the plaintiff. Patients are entitled under EMTALA, not to correct or non-negligent treatment in all circumstances, but to be treated as other similarly situated patients are treated, within the hospital's capabilities." 91 F.3d at 1138. As for treatment to stabilize the medical condition, the court noted that "stabilization" requires the hospital to first determine that the individual has an emergency medical condition. Id. at 1140; see also Baber v. Hospital Corp. of America, 977 F.2d 872, 883 (4th Cir. 1992) ("the plain language of the statute dictates a standard requiring actual knowledge of the emergency medical condition by the hospital staff"). The statute defines "emergency medical condition" as:

> (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in – (i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part;

§ 1395dd(e)(1)(A). In short, EMTALA imposes two obligations on hospitals: (1) appropriate medical screening examination to determine whether a serious medical condition exists; and (2) if such serious medical condition does exist, stabilization of the medical condition prior to transferring or discharging the patient. Vickers v. Nash Gen. Hosp., Inc., 78 F.3d 139, 142 (4th Cir. 1996).

In the instant case, Plaintiff contends in Count II, Emergency Medical Treatment and Labor Act, that Defendants failed to provide an appropriate medical screening examination; failed to

appropriately diagnose Plaintiff's emergency medical condition; and failed to stabilize or provide stabilizing treatment of the Plaintiff. These allegations fail to state a claim under EMTALA.

As previously stated, a claim under EMTALA requires a showing of a lack of uniform treatment with other similarly situated patients. Summers, 91 F.3d at 1138. Nowhere in Plaintiff's Complaint does he mention that there was any disparate treatment involved. See Vickers, 78 F.3d at 144 ("disparate treatment of individuals perceived to have the same condition is the cornerstone of an EMTALA claim"). Instead, Plaintiff's primary claim is that Defendants failed to properly treat and/or diagnose Plaintiff's condition, which is not a proper basis for stating a claim under EMTALA. Id. at 1137; see also Vickers, 78 F.3d at 142.

Further, Plaintiff does not allege, as required by EMTALA, that the hospital determined or had any actual knowledge that Plaintiff had "an emergency medical condition," which the hospital failed to stabilize. The Plaintiff alleges that the Defendants failed to provide such medical treatment "as was necessary to assure, within reasonable medical probability, that no material deterioration of plaintiff's condition was likely to result." As the foregoing discussion demonstrates, however, the standard articulated by Plaintiff is not the standard required under EMTALA.

Plaintiff argues that Power v. Arlington Hosp. Ass'n is analogous to the Plaintiff's case. 42 F.3d 851 (4th Cir. 1994). In that case, the Fourth Circuit Court of Appeals determined that the plaintiff "presented evidence from which a jury could conclude that she was treated differently from other patients . . ." Id. at 856. The plaintiff came to the emergency room complaining of pain, inability to walk, and chills. The hospital discharged her with pain medication. When the plaintiff returned to the ER the next day, she was in unstable condition with virtually no blood pressure. The hospital then diagnosed her with septic shock and admitted her to intensive care. Id. at 853. A

5

physician testified at trial that an appropriate medical examination for a patient with the plaintiff's symptoms included a blood test, which the hospital did not administer. Id. at 855.

While the facts of Power may be somewhat analogous with the facts now before this Court, Plaintiff has failed to state a claim for relief under EMTALA on the face of the complaint. See Duffy v. Landberg, 133 F.3d 1120, 1122 (8th Cir. 1998) (A court may properly dismiss a complaint where the allegations on the face of the complaint reveal "some insuperable bar to relief."). Nowhere does Plaintiff mention in the Complaint that the Defendants provided him with disparate treatment. Further, nothing in the Complaint indicates that the Defendants had any knowledge of an "emergency medical condition." Finally, the Court notes that the Eighth Circuit Court of Appeals in Summers rejects the reasoning in Power and instead finds the reasoning in the Fourth Circuit's later opinion in Vickers more persuasive. 91 F.3d at 1139, n.4 ("In fairness to the plaintiff, we observe that Power v. Arlington Hospital Ass'n, 42 F.3d 851 (4th Cir. 1994), comes close, on its facts, to supporting his position. We find the reasoning of the Fourth Circuit's later opinion in Vickers, which analyzes explicitly the problems of interpreting EMTALA that we have discussed in this opinion, more persuasive."). The Court therefore finds that Count II, based upon EMTALA, must be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Further, because the only claim remaining is a state claim for medical negligence, this case must be dismissed for lack of subject matter jurisdiction.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Doc. #12] is **GRANTED.** Plaintiff's EMTALA claim is **DISMISSED** for failure to state a claim, and the remaining state law claim is **DISMISSED** for lack of subject matter jurisdiction.

                                                  /s/ Terry I. Adelman
                                     UNITED STATES MAGISTRATE JUDGE

Dated this  23rd  day of January, 2008.